TEXTILE MAINTENANCE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Farmers Insurance Group *et al.*, Appellees).

Second District (Industrial Commission Division)   No. 2—93—0524WC

Opinion filed March 23, 1994.—Rehearing denied July 28, 1994.

McCULLOUGH, P.J., specially concurring.

D. William Porter and Laurence R. Sharlot, both of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Kenneth B. Gore, of Chicago, for appellee Ofelia Gonzalez.

John A. Strobel, of Braun, Lynch, Smith & Strobel, Ltd., of Chicago, for appellee Farmers Insurance Group.

JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal arises from an accident sustained by Ofelia Gonzalez (claimant) on July 5, 1988. The claimant filed an application for

adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.* (now codified, as amended, at 820 ILCS 305/1 *et seq.* (West 1992))) against Textile Maintenance (employer). Farmers Insurance Group (Farmers) appeared at the arbitration hearing as an additional respondent and disputed coverage for the claimant's July 5, 1988, accident, asserting that there had been effective cancellation of the policy on June 7, 1988. In addition to the coverage dispute, the employer argued that the Industrial Commission (Commission) did not have jurisdiction to interpret its insurance policy with a third party. The Commission affirmed the arbitrator's finding on the coverage issue and also concluded that it was authorized by the Act to interpret insurance policies between the employer and a third party. On administrative review, the circuit court confirmed the decision of the Commission. The issues on appeal are: (1) whether the Commission has jurisdiction to construe, interpret, and rule on the language of a workers' compensation insurance policy between the employer and the insurance company; (2) whether the notice of cancellation complied with the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 755.14 (now 215 ILCS 5/143.14(a) (West 1992))), the Act, and the employer's workers' compensation policy; and (3) whether the trial court properly interpreted Farmers' workers' compensation policy when it applied the 10-day, rather than the 60-day, cancellation date.

At the arbitration hearing, the claimant testified that on July 5, 1988, she caught her left hand in a shirt sleeve press and sustained burns to four fingers. She was hospitalized for a short time and skin grafts were applied to the burned areas. She subsequently returned to work on August 24, 1988, and was paid $7^3/7$ weeks temporary total disability by Farmers prior to its notice of cancellation being acknowledged by the National Counsel of Compensation Insurance (NCCI). NCCI is an agent of the Commission whose function is to compile and monitor insurance information for the Commission. The claimant also incurred $10,388.40 in medical expenses which have not been paid by the employer or Farmers.

Bonnie Ropp testified for Farmers that she had been employed with the insurance group since 1977. In June 1988 she was working as commercial account and records supervisor and was responsible for supervising the billing and maintenance of policies and custody and care of the individual customer files. She stated that Farmers was composed of a number of companies. Truck Exchange Insurance (TEI) and Mid-Century Insurance Company (MCI) were the two workers' compensation carriers. Ropp stated that she handled matters for both companies.

According to Ropp's testimony, she sent the employer a "Notice of Cancellation" on May 25, 1988, because of the nonpayment of premiums. It was subsequently established that the notice identified MCI as the issuing company even though the company which issued the policy was TEI. (MCI did not become the employer's workers' compensation insurance carrier until August 1988.) The notice did contain the correct policy number, cancellation date, and the statement that the payroll information and premium payment were overdue. The post office stamp with the date of mailing was also on the notice. Although the employer notified Farmers in February 1988 that its address changed from Schaumburg, Illinois, to Hoffman Estates, the first notice was sent to the employer on February 10, 1988, at the Schaumburg address. This notice requested payroll information by March 5, 1988.

After mailing the notice of cancellation to the employer on May 25, 1988, Ropp sent a similar notice to NCCI. Penny Fettis of NCCI acknowledged receipt of the notice of cancellation for the nonpayment of premiums. The notice was to take effect on June 7, 1988. Pursuant to section 4(b) of the Act, coverage would be provided for 10 days after this date, until June 17, 1988. A notice that the policy was actually cancelled was mailed to the employer on June 16, 1988. The policy was subsequently reinstated on a prospective basis as of July 21, 1988, when the required payroll information and premiums were received. Therefore there was a lapse in coverage between June 17, 1988, and July 21, 1988. (The date of the claimant's accident was July 5, 1988.)

The employer first contends that the Commission did not have jurisdiction to determine disputed insurance coverage issues between an employer and the insurer of its workers' compensation policy and that it acted outside the scope of its authority.

An administrative agency is a creature of statute and has no general or common-law powers. (*Abatron, Inc. v. Department of Labor* (1987), 162 Ill. App. 3d 697, 700, 515 N.E.2d 1336.) Any authority claimed by the agency must arise from the express language of the statute or be incident to the authority conferred by the legislature. (*Abatron, Inc.*, 162 Ill. App. 3d at 700, 515 N.E.2d at 1338.) The primary rule of statutory construction is to ascertain and give effect to the legislative intent. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167.

The Commission is an administrative agency which was created by legislative enactment for the purpose of administering the Act. (*Michelson v. Industrial Comm'n* (1941), 375 Ill. 462, 466, 31 N.E.2d 940.) The title of the Act provides that it is an Act to "promote the

general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment." Section 18 of the Act provides:

> "All questions arising under this Act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission." (Ill. Rev. Stat. 1987, ch. 48, par. 138.18 (now 820 ILCS 305/18 (West 1992)).)

The Act provides an exclusive remedy for the resolution of all issues arising out of employment related injuries. *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 447, 448 N.E.2d 866.

■ The issue arising out of the claimant's injury in the case *sub judice* was the coverage dispute between the employer and its workers' compensation carrier and which party was liable for the treatment of claimant's injuries. Section 4(g) of the Act provides:

> "In the event the employer does not pay the compensation for which he or she is liable, then an insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable to pay to the employee, his or her personal representative or beneficiary the compensation required by the provisions of this Act to be paid by such employer. The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier." (Ill. Rev. Stat. 1987, ch. 48, par. 138.4(g) (now 820 ILCS 305/4(g) (West 1992)).)

This provision indicates that the Commission has the authority and jurisdiction to determine who is legally bound to pay workers' compensation claims. (See *Koontz v. Pepsico, Inc.* (1987), 153 Ill. App. 3d 152, 505 N.E.2d 1126.) In *Koontz*, the appellate court held that the Commission had exclusive jurisdiction to review and interpret an alleged guarantee agreement entered between the employer and his former parent company to determine who was legally bound to pay workers' compensation benefits. The employees had brought a declaratory judgment action against the former parent company, alleging that under a guarantee agreement it was required to pay benefits. The appellate court affirmed the trial court's dismissal of the employees' claim based on the ruling that the issues raised in the employees' request for declaratory relief should first be addressed before the Commission. In *Franklin Hospital v. Industrial Comm'n* (1986), 139 Ill. App. 3d 907, 487 N.E.2d 1243, while jurisdiction was not at issue, the Commission did decide whether there was effective cancellation of the policy by the insurer.

■ We find the employer's reliance on *Meyer v. Buckman* (1955), 7 Ill. App. 2d 385, 129 N.E.2d 603, unpersuasive. In that case, a

homeowner tried to avoid his contractual obligation by arguing that the mover failed to get workers' compensation coverage. The court held that the Commission did not have jurisdiction over the regulation of a private contract between two parties, one of whom was not under the Act.

However, in this case the issue is a dispute as to whether the employer or its workers' compensation carrier is liable for the payment of claimant's benefits. In view of the applicable statutory provisions and relevant case law, we conclude that the Commission did have jurisdiction to rule on the coverage dispute between Farmers and the employer. We also note that the result is consistent with a recent decision of the second district, *Employers Mutual Cos. v. Skilling* (1994), 256 Ill. App. 3d 567.

The employer next contends that Farmers' workers' compensation policy with the employer was in effect at the time of the claimant's accident because the notice of cancellation was not in compliance with the Illinois Insurance Code, the Act, and the terms of Farmers' policy.

■ We first note that the construction of insurance policies and related documents is a question of law for the courts to decide. (*Hartford Insurance Co. v. Jackson* (1990), 206 Ill. App. 3d 465, 469, 564 N.E.2d 906; *Ledbetter v. Allandslee* (1987), 153 Ill. App. 3d 163, 167, 505 N.E.2d 1051.) In addition, ambiguities in the policy or related documents must be resolved in favor of the insured and against the insurer who drafted it. (*Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 473 N.E.2d 480.) An insurance company is held to a strict standard when it attempts to cancel a policy for the nonpayment of a premium. (*Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 34, 414 N.E.2d 500.) Furthermore, a notice of cancellation must conform to the provisions of the insured's policy and the Illinois Insurance Code. (*Horan & Co. v. Republic Insurance Group* (1988), 175 Ill. App. 3d 735, 737, 530 N.E.2d 275; *Ledbetter*, 153 Ill. App. 3d at 169, 505 N.E.2d at 1055.) The applicable provision of the Illinois Insurance Code (Insurance Code) states in relevant part:

> "No notice of cancellation of any policy of insurance to which Section 143.11 applies, shall be effective unless mailed by the company to the named insured, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form ***. A copy of all such notices shall be sent to the insured's broker if known, or the agent of record." Ill. Rev. Stat. 1987, ch. 73, par. 755.14 (now 215 ILCS 5/143.14(a) (West 1992)).

In addition, section 4(b) of the Act provides in relevant part:

"The insurance so certified shall not be cancelled or in the event that such insurance is not renewed, extended or otherwise continued, such insurance shall not be terminated until at least 10 days after receipt by the Industrial Commission of notice of the cancellation or termination of said insurance ***." Ill. Rev. Stat. 1987, ch. 48, par. 138.4(b) (now 820 ILCS 305/4(b) (West 1992)).

Farmers claims that it mailed a notice of cancellation to the NCCI in compliance with section 4(b) of the Act and that under the Act it is not required to give notice to the employer of an impending cancellation of its policy or take any affirmative action except to notify the Commission. However, assuming, *arguendo*, that there was compliance with section 4(b) of the Act, this section does not replace an insurer's obligations under the Insurance Code or the terms of its own policy.

In the case *sub judice*, Farmers' employee, Bonnie Ropp, testified that Farmers was made up of a number of insurance companies including TEI and MCI, which are the two companies providing workers' compensation insurance. Ropp acknowledged that the notice of cancellation identified MCI as the issuing company rather than TEI, which was the company which issued the workers' compensation policy for which the premium was due. In addition, the notice of cancellation which was allegedly sent to the employer was mailed to its last known address in Hoffman Estates but bore the wrong zip code. The zip code on the notice was 60172 rather than the correct zip code, which was 60195. On June 16, 1988, a final notice of cancellation was sent to the employer which again had the wrong zip code and indicated that MCI rather than TEI was the issuing company. Therefore, the cancellation notices did not comply with the requirements of the Insurance Code.

■ The cancellation notices also did not comply with the terms of TEI's policy where MCI rather than TEI was identified as the company canceling. The relevant part provides:

"If we cancel because you do not pay all premium when due, we will mail the Notice of Cancellation at least 10 days before the cancellation is to take effect."

In a single sentence of its brief, Farmers claims that the employer waived its argument that the notice of cancellation bore the wrong zip code because it failed to raise the issue at the arbitration hearing. However, Farmers has failed adequately to argue this issue or to cite any authority. Therefore, the argument is without merit. *County of Cook v. Renaissance Arcade & Bookstore* (1988), 122 Ill. 2d 123, 145, 522 N.E.2d 73; *Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 71, 503 N.E.2d 343.

■ Applying the strict standard of compliance to the facts of this case, we conclude that TEI's workers' compensation policy with the employer was in effect on the date of the claimant's accident.

Because of our conclusion, we have not addressed the employer's argument regarding the issue of whether 10 days or 60 days was proper notice.

The judgment of the circuit court confirming the Commission's determination that it had jurisdiction to review the coverage dispute between the employer and its workers' compensation insurance carrier is affirmed. The judgment of the circuit court confirming the Commission's decision that there had been effective termination of the insurance policy at the time of the claimant's injury is reversed.

Affirmed in part and reversed in part.

WOODWARD, SLATER, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I agree with the conclusion of the majority that the Commission did have jurisdiction to rule on the coverage dispute between Farmers and the employer. I also agree that the compensation policy was in effect at the time of the claimant's accident but do not agree with the majority's reasons for finding that there was no proper cancellation in compliance with the Illinois Insurance Code, the Act, and the terms of the Farmers policy.

I agree with the argument of Farmers that there was no testimony from any witness regarding the accuracy or inaccuracy of the zip code number of the address used to notify the respondent of the cancellation.

The parties argue in their briefs the effect of the cancellation notice, which was respondent's exhibit No. 6, and the effect of Textile's exhibit No. 5. The record is clear that Farmers admits that Bonnie Ropp, an employee of Farmers, testified Textile's exhibit No. 5 went out with Farmers exhibit No. 6, the cancellation notice. Farmers' exhibit No. 5 as shown in the record is a second request for the payment of workers' compensation insurance. The form requested that payroll information and a determination of the premium be made by Textile and that it be submitted to Farmers on or before July 6, 1988, which is one day after the accident incurred by the claimant on July 5, 1988. It is inconsistent, to say the least, for Farmers to send a notice of cancellation along with a second request for payroll information and for a premium payment to be due on or before July 6, 1988, one day after the date of injury, July 5, 1988. As the majority indicates,

the insurance company is held to a strict standard when it attempts to cancel a policy for the nonpayment of a premium. The cancellation notice and the second request for payment referred to above point out ambiguities which must be held against Farmers.

The cancellation notice had no effect, because, if Textile had forwarded its premium pursuant to the second request on July 6, 1988, the insurance would still be in effect. Apparently by the two notices sent by Farmers, it desired to both cancel the insurance and to continue its effectiveness if the premium was paid by the date shown.

The result reached by the majority is correct.